**L. S. YOUNGBLOOD and M. L. McLain, Plaintiffs,**

**v.**

**Hughes SEEWALD, Defendant.**

**Civ. No. 8626.**

United States District Court
W. D. Oklahoma.

May 25, 1961.

418

Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, Okl., for plaintiffs.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, Okl., for defendant.

STEPHEN S. CHANDLER, Chief Judge.

Plaintiff L. S. Youngblood was the owner of five oil and gas leases covering an undivided 64.22 mineral acre interest under the Southwest Quarter of Section 18, Township 4 North, Range 9 ECM in Cimarron County, Oklahoma. Each lease provided for a 3/16ths royalty instead of the usual 1/8th. Youngblood sold and assigned the leases to plaintiff M. L. McLain, reserving unto himself an overriding royalty of 1/8th of 7/8ths of all production. Thereafter the defendant

Hughes Seewald, wanting to drill a well on the drilling and spacing unit which included the above-mentioned acreage, by virtue of the Oklahoma Oil and Gas Conservation Act obtained a pooling order from the Corporation Commission after notice and hearing as required by the Act. The pooling order (No. 38059) provided in pertinent part:

"1. That the oil and gas leasehold interests in Section 18, Township 4 North, Range 9 ECM, Cimarron County, Oklahoma, are hereby pooled for the production of gas and gas condensate from the Keys Sand, and Hughes Seewald is hereby permitted and authorized to drill and operate the well on said unit.

"2. That for the purpose of this order the sum of $55,000.00 is fixed as the cost of drilling and completing said well and in the event there is a dispute as to such cost after said well has been completed, the Commission retains jurisdiction of this cause for the purpose of redetermining such cost; that the sum of $50.00 per acre, or an override of 1/8th of 7/8ths, is hereby fixed as a fair and reasonable bonus to be paid as mineral compensation in lieu of the right to participate in the working interest in said well.

"3. That the owners of the outstanding leasehold and unleased mineral interests in said unit shall be permitted to participate in the working interest in said well by paying their proportionate part of the cost of drilling and completing the same, or furnishing satisfactory evidence for the payment thereof, within 15 days from the date of this order; that in the event such owners do not desire to participate in the working interest of said well, they shall be paid the sum of $50.00 per acre, or an override of 1/8th of 7/8ths, as mineral compensation in lieu thereof."

Pursuant to the alternatives provided for in that order, plaintiff McLain elected

to take a ⅛th of ⅞ths of all production as an overriding royalty, instead of participating in the cost of the well. That is, he elected to take the overriding royalty in exchange for the working interest. A well was then drilled by defendant Seewald and completed as a commercial gas well.

Plaintiffs contend that the defendant Seewald, by virtue of the pooling order and the election of McLain to take the overriding royalty interest instead of participating in the working interest in the well, stepped into the shoes of McLain and thereby assumed McLain's obligations under the leases which bound him to pay not only the ⅛th of ⅞ths overriding royalty fixed by the Corporation Commission as mineral compensation in lieu of the right to participate in the well, but also the ⅟₁₆th excess royalty and the ⅛th of ⅞ths overriding royalty of Youngblood. Defendant Seewald contends that he as the "operator" of the pool, is required by the pooling order to pay to the owners of the working interest of the leasehold ⅛th of ⅞ths of the production and no more. Seewald is not interested in how this payment is divided between the ⅟₁₆th excess royalty holder; Youngblood, the holder of a ⅛th of ⅞ths overriding royalty interest; and McLain, the holder of the balance of the working interest. In other words, Seewald contends that as defined by the controlling statutes, set forth below, for pooling purposes the royalty interest is limited to ⅛th and the working interest is defined as the remaining ⅞ths. That the lessee, McLain, is required by Section 87.1(d) "out of his share of the working interests from the well drilled on said unit," to "pay said excess royalty," and "overriding royalty."

The applicable provisions of the Oklahoma Oil and Gas Conservation Act are as follows:

52 O.S.1951 § 86.1(h), provides:

"The term 'Operator' shall mean any producer of oil or gas who has drilled a well or wells into a common source of supply and is engaged in operating such well or wells for the purpose of producing oil or gas therefrom;"

52 O.S.1951 § 87.1(d), provides in pertinent part:

"Where, however, such owners have not agreed to pool their interests, and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands in the spacing unit as a unit. All orders requiring such pooling shall be made after notice and hearing, and shall be upon such terms and conditions as are just and reasonable *and will afford to the owner of such tract in the unit the opportunity to recover or receive without unnecessary expense his just and fair share of the oil and gas.*
\* \* \*

"For the purpose of this Act *the owner, or owners, of oil and gas rights in and under an unleased tract of land shall be regarded as a lessee to the extent of a seven-eighths (⅞) interest in and to said rights and a lessor to the extent of the remaining one-eighth (⅛) interest therein.*
\* \* \*

"In the event a producing well, or wells, are completed upon a unit where there are, or may thereafter be, two (2) or more separately owned tracts, any royalty owner or group of royalty owners holding the royalty interest under a separately owned tract included in such spacing unit shall share in the one-eighth (⅛) of all production from the well or wells drilled within the unit, or in the gas well rental provided for in the lease covering such separately owned tract or interest *in lieu of the customary fixed royalty,* in the proportion that the

acreage of their separately owned tract or interest bears to the entire acreage of the unit; *provided,* where a lease covering any such separately owned tract or interest included within a spacing unit *stipulates a royalty in excess of one-eighth (⅛) of the production, or said lease shall be subject to an overriding royalty,* to production payment or other obligation, *then the lessee of said lease out of his share of the working interests from the well drilled on said unit, shall sustain and pay said excess royalty, overriding royalty,* or production payment, and therefrom meet any other obligation due in respect to the separately owned tract or interest held by him." (Emphasis supplied.)

The "lessee" mentioned in the portion of the statute (52 O.S.1951 § 87.-1(d)) which states that " * * * the lessee of said lease * * * shall sustain and pay said excess royalty, overriding royalty, or production payment, * * " can only have reference to the person who was the holder of the lease at the time the pooling order was entered. By no stretch of the imagination could the lessee referred to in the statute be construed to mean the "operator" under the pooling order. The statute in plain words defines "operator" and sets forth who is to be considered the lessee and royalty owner for the purposes of this Act and for the purposes of pooling, stating that the landowner or lessor is to be considered insofar as the pooling arrangement is concerned to have ⅛th royalty and the lessee the remaining ⅞ths working interest. The only way this case could be decided for the plaintiffs would be for this court to construe the Act to mean that the "operator" would be considered to be the lessee.

If the Legislature had intended to state in 52 O.S.1951 § 87.1(d) that the operator instead of the lessee should pay the excess royalty, and having defined operator, it could have and undoubtedly would have stated that the operator would have to pay the burdens on the operating interest instead of the lessee who took the working interest burdened therewith and therefore had an interest less than all the working interest which he was obligated to clear of those burdens before becoming entitled to the mineral compensation provided in the order. Unless this construction of the Act is adopted, Section 87.1(d) defining the statutory royalty to be ⅛th and the statutory working interest to be the remaining ⅞ths would have been unnecessary.

The universal definition of an override is that it is an estate carved out of the working interest under a lease. The Legislature has stated for the purpose of this Act, any royalty over and above the ⅛th usual royalty shall be considered also to be carved out of the working interest so that regardless of any such excess royalty provisions where leases are pooled, each working interest will be the same size and the oil and gas allocable to the working interest can be equitably distributed among leases with excess royalty and/or overriding royalty and leases that provide for the simple ⅛th royalty.

In view of the foregoing, the court must conclude that Seewald, the operator, is required to pay to the owners of the ⅞ths statutory working interest an override of ⅛th of ⅞ths as "mineral compensation" for the statutory ⅞ths working interest and no more; and that since McLain elected to take the overriding royalty in exchange for his working interest, he must satisfy the claims of the "excess" royalty holder and Youngblood out of the ⅛th of ⅞ths "mineral compensation". The determination of the respective rights of these three is not an issue here. Perhaps the Corporation Commission if requested could have made such determination in the pooling order.

Judgment is accordingly entered for the defendant.

This memorandum opinion shall constitute Findings of Fact, Conclusions of Law and Judgment herein.